Pennington, J.
— Observed—That even if the witness was a party on the record, that itself would not disqualify him; that it all turned on the question of interest. He recollected a case where an action was brought against the governors of a hospital; several of the governors were offered as witnesses and objected to; but Lord Kenyon admitted them, on the ground of their having no personal interest in the action. He believed, however, it was a modern case, and could not be read.*
[*] Mr. Maxwell said — That in the case alluded to, Lord Kenyon had drawn a distinction between parties who were mere trustees of a public charity, and that of a mayor and citizens, who might have a great interest in the event of the cause.
Mr. R. Stockton and Mr. Ewing, on the other side, answered — That the witness objected to, Mr. Reader, was not a party on the record; that lie had no personal interest different from any other citizen of the county, and that the interest, if any such there was, was provided against by the statute; that acting in his corporate capacity, he was not personally liable.
The Court were clearly of opinion, that Mr. Reader was a legal witness; that even if he had an interest, it arose from the circumstance of his being an inhabitant of the county; and, therefore, came within the statute provision in that respect.
*283 Mr. Leake, offered to read the affidavit of one of the jury of inquiry, staling the items allowed by the jury, and charged against the defendant in making the inquisition, to show that the jury had erred.
Tliis was objected to by the counsel for the plaintiffs, on which, Mr. Leake cited the following authorities in support of it: Sayre on Damages 105, 212, 235, Hard. Rep. 358. 1 Wil. 329. 1 Bur. 383. 8 Brown P. Cases 217. 1 do. 413. 6 do 416. 1 Vern. 159. 1 Barnes 149, 315, 321. 2 Barnes 191. 7 Mod. 55. 1 Dallas 32. Bunb. 41. Stra. 642.
Mr. Maxwell, on the same side, said — That a stronger reason existed for the admission of affidavits of jurors of inquiry than that of jurors on trials of issues at circuit.; because, he said, that the report of the judge supplied the place of sud» affidavits.
.Mr. Ewing and Mr. Stockton, contended — That a single juror could not on oath, inform the Court on what grounds he and his fellows found their verdict; that there was no authority to justify it.
[#] Kirkpatrick, C. J.
— Was of opinion, that the affi - davit could not be read.
Rossell, J.
— Thought that the case in Dallas, in point, and ivas for allowing the affidavit to be read.
Pennington, J.
— Said, that he had come across cases on this subject, in the course of his reading, which he thought, at the time of reading too rigid, that shut out affidavits of jurors, which he inclined to think ought to have been read ; but he did not feel prepared to go to the length of admitting this affidavit; it was nothing less than calling on the juror to disclose to this Court, the ground and foundation of the verdict; that they admitted this item and rejected that. If this should become the practice, in every motion for a new trial, the affidavits of jurymen will be produced; and, in all probability, on both sides ; one juryman will remember one thing, and another another, from which, endless litigation and*confusion will ensue; it will also be one step towards taking the trial of fact from the jury, and placing it in the Court, ' The affidavit rejected.
On the trial of this cause, there had been a demurrer to evidence, the jury not assessing the damages conditionally; on rendering judgment, the writ of inquiry issued; from the facts which were brought on to the record by means of the demurrer to evidence, Mr. Leake endeavored to show, that the jury of inquiry had done the defendant injustice; hut the Court were unanimously of opinion, that the jury had done right, and therefore, Refused the rule

Peake's Nisi Prius, 155. Vid Peake’s Ev. 149.